Joseph S. GRUSS, Appellant,

v.

R. H. CUMMINS et al., Appellees.

No. 5345.

Court of Civil Appeals of Texas.

El Paso.

Nov. 18, 1959.

Rehearing Denied Dec. 9, 1959.

Stubbeman, McRae, Sealy & Laughlin, W. B. Browder, Jr., Milton L. Bankston, Midland, for appellant.

Ben G. Smith, Fort Worth, Neill Blanks, Lewis & Logan, Glenn R. Lewis, San Angelo, for appellees.

LANGDON, Chief Justice.

This is an appeal from a judgment of the district court of Reagan County adverse to appellant, Joseph S. Gruss (defendant below), in a suit brought by appellees, R. H. Cummins, W. R. Berger, C. H. Pishny, and Ira Brinkerhoff (plaintiffs below), seeking to establish a contract for the conveyance by appellant

Gruss to R. H. Cummins of a $^{15}/_{16}$ of $^1/_{24}$ of $^7/_8$ overriding royalty interest in the oil and gas and other minerals produced under a lease from Minnie E. Haby, et vir, to R. H. Cummins, dated September 23, 1949, covering the West half of Section 15, Block E, Certificate 552, H.E. & W.T. R. R. Co., Reagan County, Texas. The lease was secured by Cummins for Fullerton Oil Company and was assigned by Cummins to Fullerton on October 17, 1949, with Fullerton agreeing to pay Cummins, as compensation for his services in securing the lease, $^1/_{24}$ of $^7/_8$ overriding royalty.

In December of 1953, Cummins' brother-in-law, Neal Barrett, interested Gruss in the lease and arranged for a farmout of it from Fullerton to Gruss. A note or memorandum of this transaction was made by Barrett and initialed "O.K. J.G." by appellant Gruss. It is this memorandum, a reproduction of which is set out below, upon which Cummins and the other appellees rely for the basis of their suit.

The case was submitted to the jury on eleven special issues, of which number we believe only Special Issue No. 1 need be set out here. It is as follows:

."Special Issue No. 1

"Do you find from a preponderance of the evidence that on or about December 16, 1953, in connection with obtaining the farmout agreement from Fullerton Oil Company, the defendant Gruss agreed that upon assignment of the lease from Fullerton Oil Company to the defendant Gruss in addition to the $\frac{1}{16}$ of $\frac{7}{8}$ override to be reserved by Fullerton, the plaintiff Cummins should have an overriding royalty of $\frac{1}{24}$ of $\frac{7}{8}$ of the oil and gas and other minerals produced under the lease in question from the West half of Section 15, and the same to come out of the lessee's $\frac{7}{8}$ working interest and to be free of drilling, equipping and producing costs?"

Special Issue No. 1 was answered "Yes", and Special Issue No. 2, which inquired whether Cummins promised or gave a valuable consideration to Gruss for Gruss' agreement, if any, was answered, "He did give a valuable consideration."

■ On contracts within the Statute of Frauds, the question often arises whether a memorandum states with sufficient certainty the bargain to which it relates. The general rule is that the required memorandum must contain all the essential terms of the agreement, so that parol evidence is not required to supply any substantive feature which has been omitted. The broader rule governing the admission of parol evidence for the interpretation of ambiguous writings where the Statute of Frauds is not involved has no application.

Before undertaking to discuss the various points of error raised by defendant, we have looked to the pleadings filed by plaintiff in the court below for the purpose of ascertaining the nature of the bargain alleged by plaintiffs and sought to be enforced against the defendant Gruss. It has proven unexpectedly difficult, however, to ascertain from these pleadings exactly what plaintiffs contend the defendant Gruss promised to do.

On the one hand, it appears that it is the contention of plaintiffs that an overriding royalty of $\frac{1}{24}$ of $\frac{7}{8}$ of all the oil, gas and other minerals that might be produced and saved from the land covered by the lease in question "should be preserved" to the plaintiff Cummins for his services in securing such lease in behalf of Fullerton Oil Company, and that the defendant Gruss agreed to accept a farmout of the lease in question from Fullerton Oil Company subject to such reservation in favor of Cummins and an additional reservation of an overriding royalty in favor of Fullerton Oil Company of $\frac{1}{16}$ of the net of $\frac{7}{8}$ after the $\frac{1}{24}$ of $\frac{7}{8}$ overriding royalty interest reserved to Cummins.

By separate agreement evidenced by telegrams passing between Fullerton Oil Company and the plaintiff Ralph Cummins, on January 8, 1954, it was proposed by Fullerton Oil Company:

"Re proposed Reagan County farmout to Joseph S. Gruss please advise by Western Union that $\frac{1}{24} \times \frac{7}{8}$ overriding royalty due you et al will be paid by Gruss and Fullerton in proportion to their respective net interests and that Fullerton will therefore assign you $\frac{1}{24} \times \frac{1}{16} \times \frac{7}{8}$ overriding royalty as to those rights earned by Gruss under farmout contract and will assign $\frac{1}{24} \times \frac{7}{8}$ as to rights retained by Fullerton in west half Section 15, Block E."

Cummins replied to the Fullerton telegram on the same day by Western Union telegraph addressed to Fullerton Oil Company, as follows:

"Retel your understanding is correct we shall *lock* to Gruss for $\frac{1}{24}$ of $\frac{7}{8}$ of

his net interest earned of Section 15, Block E, *Regan* County—"

Thereafter, on January 13, 1954, Fullerton Oil Company executed a farmout agreement with defendant Gruss, in which Fullerton reserved for itself an overriding royalty of $\frac{1}{16}$ of $\frac{7}{8}$ of all the oil, gas and other minerals that might be produced and saved from the leasehold interest being assigned to Gruss. Neither the farmout agreement nor the subsequent assignment of the leasehold interest by Fullerton to Gruss reserved to plaintiffs the overriding royalty interest claimed by them. Fullerton Oil Company, however, by separate assignment conveyed to Cummins et al, $\frac{1}{24}$ of $\frac{1}{16}$ of $\frac{7}{8}$ as to those rights earned by Gruss. It is plaintiffs' contention that defendant Gruss agreed to preserve the full $\frac{1}{24}$ of $\frac{7}{8}$ overriding royalty interest to plaintiff. On the other hand, it is contended by plaintiffs that, since they have received from Fullerton Oil Company only $\frac{1}{16}$ of the overriding royalty interest promised by Gruss to be "preserved" to them, they are entitled to receive from Gruss the remainder of their claimed interest, which amounts to $\frac{15}{16}$ of $\frac{1}{24}$ of $\frac{7}{8}$ of all the oil, gas and minerals produced from the land covered by the lease in question; it being the contention of plaintiffs that the memorandum set out above, together with various other writings admitted by the court, when construed together, constitutes a sufficient memorandum to satisfy the Statute of Frauds and evidence an agreement or promise in writing on the part of defendant Gruss to convey such overriding royalty interest to plaintiffs.

 The overriding royalty interest claimed by plaintiffs is an interest in land and, as such, is realty within the meaning of the Statute of Frauds, Article 3995, subdivision 4, Vernon's Annotated Texas Civil Statutes. Consequently, since the promise or agreement upon which the action is brought is one concerning a conveyance of land, it must be in writing and signed by the party to be charged. The Statute of Frauds is not satisfied where such promise or agreement is established by parol evidence, nor can it be satisfied by writings or documents not signed by the party to be charged, except where all such writings or documents are incorporated into a writing signed by the party to be charged. What is essential is that the signature of the party to be charged shall authenticate the whole of the writing. It will not be enough to incorporate all into an unsigned writing, or into a writing signed by plaintiff; and it is immaterial that a writing signed by plaintiff refers to a writing signed by defendant. What is necessary, then, is that a writing, so signed by the person to be charged, refer to all writings not so signed that are sought to be made a part of the memorandum.

Defendant has assigned 28 specific points of error and seven general points on which he predicates this appeal. He contends, generally: (1) that the contract claimed by plaintiffs is within the bar of the Statute of Frauds and Conveyances and, therefore, unenforceable; (2) that the trial court erred in entering judgment for an overriding royalty interest based upon a contract within the Statute of Frauds and Conveyances; (3) that the trial court erred in admitting in evidence, and giving consideration to, the parol evidence tendered by plaintiffs to supplement and add to the written documents; (4) that there was no actual promise or meeting of the minds set forth in the memorandum, letters or telegrams, sufficient to comply with the Statute of Frauds and Conveyances; (5) that there was no consideration for the claimed agreement between defendant Gruss and the plaintiff Cummins; (6) that the trial court erred in admitting in evidence and permitting consideration of the later telegrams and letters along with the original memorandum initialed by Gruss; and, (7), that the trial court erred in permitting introduction in evidence of the testimony of plaintiffs concerning Cum-

mins' self-serving communications with Fullerton Oil Company, in violation of the rule of res inter alios acta.

We have carefully examined the original memorandum bearing the notation "OK" and the initials "JG", which are the initials of the defendant Joseph Gruss and is admittedly signed by him—therefore, it constitutes a memorandum in writing signed by the person to be charged. Is it, however, standing alone, a sufficient memorandum under the Statute of Frauds to evidence a promise or agreement in writing, on the part of the defendant Gruss, to convey to plaintiffs the interest in the land claimed by them? We think not. While no particular form for the memorandum is prescribed by statute, it is well settled that the memorandum must be complete in itself, and cannot be eked out by parol evidence. Osborne v. Moore, Tex.Com.App., 112 Tex. 361, 247 S.W. 498.

Of course, technical terms and trade usages may be explained by parol evidence, if a person cognizant of such terms and usages would be able to read and understand the meaning of the memorandum and the nature of the bargain to which it relates. However, essential details of the promise or agreement which cannot be supplied by an explanation of the technical terms, initials and symbols *actually used* in the contract or memorandum may not otherwise be supplied by parol evidence. In other words, the function of parol evidence is to explain what is actually there, and not to supply that which is lacking.

The property involved in this suit, the conveyance of which is sought to be compelled, is an overriding royalty interest. The term "overriding royalty" has a well-defined meaning in Texas. It is an interest which is carved out of, and constitutes a part of, the working interest created by an oil and gas lease. Knight v. Chicago Corporation, Tex.Civ.App., 183 S.W.2d 666; 144 Tex. 98, 188 S.W.2d 564.

An "overriding royalty" interest is necessarily derived from a particular oil and gas lease which constitutes the assignor's mineral estate, and its validity is subject to the terms, conditions and existence of such a lease. Thus, one of the most essential elements of a contract for the conveyance of such an overriding royalty interest is a description of the lease from which it comes; for it is the lease which denotes the life and breadth of the estate to be assigned. Thus, where only the surface estate is described, the memorandum is not sufficient, under our Statute of Frauds, to render enforceable an alleged contract to convey an interest in the oil and gas leasehold estate.

This court has heretofore held, in Norsworthy v. Hewgley, Tex.Civ.App., 234 S.W. 2d 126 (error refused), in an opinion by the late Chief Justice Price, that a description of the surface is but a part of the description of the minerals; and the case points out that it is the "estate in the minerals"— i. e., oil and gas under the surface of definitely described land—which was the subject matter of the contract, and not the surface estate in the land.

Plaintiffs offered, and there were admitted into evidence, some thirty letters, telegrams and documents, in addition to the original memorandum, which plaintiffs contend when construed together constitute a sufficient memorandum in writing to satisfy the Statute of Frauds.

We have carefully examined and considered each letter, telegram and document relied on by plaintiffs and find that, while some of these instruments were properly admitted by the court, many of them were improperly admitted over defendant's objections. These various letters, telegrams and documents are to numerous to set out here, and would unduly burden this opinion by a discussion of each one in detail. The two telegrams, the texts of which are set out herein, are plaintiffs' exhibits No. 27 and No. 28, and evidence a telegraphic exchange of an offer by Fullerton and an acceptance by plaintiff Cummins,

which was plead by plaintiffs and specially excepted to by defendant. We think the trial court erred in not sustaining defendant's special exception, and in admitting evidence of a transaction between other parties, since it was not proof of any fact in issue in the present suit. Such evidence could have no probative force to establish the contract between Cummins et al. and the defendant Gruss; and, as was said by this court in Williams v. Texas Employers' Insurance Ass'n, Tex.Civ.App., 218 S.W.2d 482, "It was res inter alia acta." Sharp v. J. R. Watkins Co., Tex.Civ.App., 250 S. W.2d 739; Rosenfield v. White, Tex.Civ. App., 267 S.W.2d 596; Stuart v. Kohlberg, Tex.Civ.App., 53 S.W. 596.

■ The most important class of facts which are excluded on the ground of irrelevancy are the acts and declarations, either of strangers, or of one of the parties to the action in his dealings with strangers. Such facts are denominated "res inter alia acta." Other cases in which the same principle of law is announced are: Taylor v. McFatter, Tex.Civ.App., 109 S.W. 395, and Missouri, K. & T. Ry. Co. of Texas v. A. E. Want & Co., Tex.Civ.App., 179 S.W. 903.

■ To comply with the Statute of Frauds, the written memorandum or proposal must be signed by the party to be charged therewith. The initial memorandum while signed by defendant, is not sufficient, standing alone, to supply the essential details of the bargain alleged by plaintiffs and sought to be enforced. The memorandum must contain all the terms, and if there are several writings, the signed writings must not only refer to the other, but must assent to its terms, at least impliedly.

The original memorandum contains no reference to any existing instrument; it does not refer to any of the later writings; and thus does not incorporate any other writings, which we think it must do, or fail as a memorandum in writing, signed by the party to be charged, sufficient to satisfy our Statute of Frauds.

■ The statute is not satisfied where essential details of the promise or agreement to convey an interest in land are established by parol evidence and by documents not signed by the party to be charged, nor authenticated by his signature. It has also been held that parol evidence is not admissible to show that even signed writings relate to the same transaction; the connection between such instruments must be evident from the writing itself. Oral evidence can only bring together the different writings. It cannot connect them for the purpose of satisfying the Statute of Frauds. Douglass v. Texas-Canadian Oil Corporation, 141 Tex. 506, 174 S.W.2d 730; Taber v. Pettus Oil & Refining Co., 139 Tex. 395, 162 S.W.2d 959, 141 A.L.R. 808.

From what we have said, it follows that we are of the opinion that the contract alleged by plaintiffs is within the bar of the Statute of Frauds and, therefore, is unenforceable. For this reason, and because of the error of the trial court in admitting in evidence testimony of plaintiffs concerning communications with Fullerton Oil Company in violation of the rule of res inter alios acta, this case must be reversed.

The case must either be remanded, or here rendered for defendant. Except for the fact that plaintiffs assert on this appeal that they also relied for recovery upon a trust theory, in which they contend that Fullerton Oil Company held the disputed overriding royalty interest in trust for plaintiff Cummins, it would be our duty to render this case for defendant. Plaintiffs have advanced the theory that the defendant Gruss was charged with full knowledge of Cummins' interest in said lease before it was assigned by Fullerton to defendant, and that defendant Gruss simply succeeded Fullerton as trustee. Plaintiff says, "actually the Statute of Frauds question has been unduly besieged by both sides."

We deem it unnecessary to pass upon the question of whether the admissible evidence adduced on the trial of this case below would be sufficient to sustain a jury

finding on special issues that might have been, but were not, submitted by the trial court on plaintiffs' asserted trust theory.

 It appearing to us that this phase ·of the case may not have been fully developed upon the trial below, and that justice will be better served by a remand ·of the case, the judgment of the trial court is, therefore reversed and the cause remanded.